**FILED**
VANESSA L ARMSTRONG, CLERK
Dec 02 2020
U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>**JOHN F. JOHNSON,**<br>**a/k/a Grandmaster Jay**<br>*Defendant* | Case No. 3:20-mj-752 |

### CRIMINAL COMPLAINT

I, the complainant in this case, state the following is true to the best of my knowledge and belief.

On or about the date of September 4, 2020 in the county of Jefferson in the Western District of Kentucky, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111 | (Assaulting, resisting, or impeding certain officers or employees) |

This criminal complaint is based on these facts:

[X] Continued on the attached sheet

_____
*Complainant's signature*

Daniel Nally, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.[1]

Date: December 2, 2020

_____
*Judge's Signature*

City and State: Louisville, Kentucky

Regina S. Edwards, U.S. Magistrate Judge
*Printed Name and Title*

BRC/JDJ (AUSA initials)

---

[1] This complaint was issued based on telephonic or other reliable means.

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Daniel Nally, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, hereby state the following:

1. I am an investigative or law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to make arrests.

2. I, Daniel Nally, have been a Special Agent of the FBI since January 2016. As a Special Agent of the FBI, I am authorized to investigate crimes involving violations of federal law. I have been involved in the investigation of numerous types of offenses against the United States, including Cyber Crimes, Crimes Against Children, Violent Crimes and Gangs. I have received training in general law enforcement and specialized training in cyber investigations. This specialized training includes computer forensics, network traffic analysis, professional certifications, and programming etc.

3. I am familiar with the information contained in this affidavit through my review of the investigation and documents and records contained therein, and from conversations with other law enforcement officers and agents. Because this affidavit is submitted in support of application for a criminal complaint and arrest warrant, it does not include every fact known concerning this investigation. There is, however, set forth a statements of fact and circumstances sufficient to establish probable cause for the issuance of an arrest warrant.

## SUMMARY OF PROBABLE CAUSE

4. On the evening of September 4, 2020, **JOHN FITZGERALD JOHNSON**, a/k/a "Grandmaster Jay", forcibly assaulted, resisted, opposed, impeded, intimidated, and

1

interfered federally deputized task force officers while they were engaged in or on account of the performance of official duties, when Johnson aimed/brandished an AR platform rifle at them. Johnson aimed/brandished an AR platform rifle at federally deputized Task Force Officers (TFOs), referred to as TFO#1 for the FBI & TFO#2 for the United States Secret Service, and LMPD officers, referred to as Officer#1, Officer#2, and Officer#3, while they were on the roof of the Jefferson County Grand Jury Building to take up an over watch position on the eastern edge looking down on Armory Place.

5. Title 18, United States Code, Section 111(Assaulting, resisting, or impeding certain officers or employees) prohibits:

> (a) In general.—Whoever—(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 [as a federal officer] while engaged in or on account of the performance of official duties; or (2) forcibly assaults or intimidates any person who formerly served [as a federal officer] on account of the performance of official duties during such person's term of service, shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
> (b) Enhanced penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon ... or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

6. Title 18 United States Code, Section 1114, defines officer as "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that

assistance. FBI and United States Secret Service Task force officers are federal law enforcement officers.

## INTRODUCTION

7. In approximately May of 2020 an anonymous tipster from the public advised that the leader of NFAC had called for attacking Minneapolis law enforcement. The leader appealed to anyone with a firearm to join him. The tipster provided links to the videos where Johnson made the statements on YouTube. The FBI identified this "leader" as John F. Johnson

8. The FBI reviewed these videos determining that on or about 26 May 2020, Johnson posted the two videos as his response to the city of Minneapolis regarding the death of George Floyd. At various points in the videos Johnson makes direct threats to law enforcement along with other threats of violence. For instance, in regards to NFAC members working with "the other side" [Note: believed to be a reference to working with law enforcement] Johnson states that if you join NFAC and we find out you're working for the other side, we will kill you. In regards to following the law, Johnson states that "they" [Note: believed to be referencing NFAC] will react in any way they choose and they don't care about the law because it doesn't benefit them. In regards to interactions with law enforcement officers, Johnson instructs his followers to assault police officers and then remove the officers body cameras to conceal footage of them assaulting the officers.

9. On or about May 27, 2020, Johnson, using monikers on YouTube of "theofficialgrandmasterjay" and "thegrandmasterjay", called for inciting violence

against the Minneapolis Police Department. In the video, Johnson called for people to go to Minneapolis with weapons in order to hold the two officers responsible for the killing of George Floyd. Further, on June 5, 2020, Johnson using YouTube moniker ""theofficialgrandmasterjay" stated that the only way to stop police violence is to identify and locate the homes of police, burn the houses to the ground, kill the officer, their family members, and associates.

## PROBABLE CAUSE

10. On the evening of September 4, 2020, Officers from the Louisville Metro Police Department were conducting over watch and surveillance of a crowd that had gathered in Jefferson Square Park. Various protest groups had chosen this park, likely due to its close approximation to various local governmental buildings, to congregate related to ongoing national protests/civil unrest and related to the Breonna Taylor investigation. Officers were located inside, and on the roof of, the Jefferson County Grand Jury building located at 514 W. Liberty Street, Louisville, KY.

11. At a time prior to 8:34 pm, a Louisville Metro Police Department radio transmission occurred advising Officers that six to eight heavily armed individuals were parked on Armory Place next to the parking garage structure.

12. Federally deputized Task Force Officers (TFOs), referred to as TFO#1 & TFO#2 and LMPD officers, referred to as Officer#1, Officer#2, and Officer#3, went to the roof of the Jefferson County Grand Jury Building to take up an over watch position on the eastern edge looking down on Armory Place. The purpose was to observe the unknown armed individuals on Armory Place and try to determine their intentions.

13. Upon arriving at the eastern edge of the roof, the Officers and TFOs began their surveillance. A short time after initiating surveillance, TFO#1, Officer#1, and Officer#3

were blinded by a light which they shortly thereafter determined was a flashlight mounted to the rifle being aimed at them by Johnson. Officer#2 advised he was not blinded by the flashlight because as soon as he saw Johnson begin to raise his rifle, he pulled himself back away from the roof edge to take cover. TFO#2 advised he was not blinded by the flashlight but also pulled himself back away from the roof edge after hearing TFO#1 announce that Johnson had aimed his rifle at the Officers and TFOs on the roof.

14. The FBI interviewed all the Officers and TFOs above. They all advised that they identified the individual on Armory Place, who aimed the rifle at them, as being Johnson [they knew him by his aka "Grand Master Jay"] and the group as being NFAC members. Johnson and the NFAC members had been observed by TFO#2 and Officer#2 earlier in the day at G.G. Moore park and were driving the same vehicles and dressed in the same clothing. Additionally, all the Officers and TFOs were familiar with Johnson's appearance, mannerisms, and tactics due to NFAC's march in Louisville on July 25, 2020 and from them watching various online and social media videos posted by Johnson.

15. The Officers and TFO's advised they all perceived a threat from Johnson based on him aiming his rifle at them. All officers advised they were concerned Johnson might intentionally, or even accidentally, discharge a round at them. All officers recognized that the distance between themselves and Johnson was well within the effective range of an AR platform style rifle. TFO#2 and Officer#3, who were wearing soft body armor, were aware that soft body armor would not stop a rifle round.

16. The Officers and TFO's advised that approximately 30 seconds after Johnson aimed his rifle at them, Jessie Halladay, Special Advisor to the Louisville Metro Police

5

Department, exited the Metro Safe building and meet with Johnson and Johnson's local NFAC contact Lebron Seay. The FBI interviewed Halladay who positively identified Johnson from surveillance footage that was taken of the encounter.

17. The FBI obtained one Louisville Metro Police Department radio transmission and two surveillance videos related to this encounter. Review of the radio transmission reveals that TFO#1 makes a transmission over the radio at 8:35:12 advising that "Grand Master Jay" pointed a rifle at "us". LMPD Major David Allen, broadcasting as Car 9 at 20:35:22, confirms TFO#1's statement regarding Johnson pointing his rifle at the Officers and TFOs on the roof of the Jefferson County Grand Jury Building. TFO#1 makes a second transmission at 20:36:01 confirming it was "Grand Master Jay".

18. The FBI reviewed the surveillance video from the encounter consisting of Real Time Crime Center camera footage taken from the north-west corner area and south-west corner area of the Metro Safe building. As seen in screen shots from the first camera

angle, labeled "RTCC SW SS#1" through "RTCC SW SS#2", Johnson is shouldering his rifle and aiming the rifle at the officers on the Jefferson County Grand Jury Building.



**RTCC SW SS#1**  **RTCC SW SS#2**

19. Review of surveillance video from the north-west corner area shows the same encounter and Johnson aiming his rifle at the Officers and TFOs on the roof of the Jefferson County Grand Jury Building. Additionally, from this angle, the rail mounted flashlight can be clearly seen as "on".

20. Johnson had traveled to Louisville, KY on July 25, 2020 in order to conduct a NFAC march in protest of the Louisville Metro Police Department shooting of Breonna Taylor. Prior to that trip, Johnson and his local contact, Lebron Seay, had been on video conference calls with LMPD Major Gregory to coordinate the march. Major Gregory

7

advised Johnson that officers would be on roof tops of surrounding buildings and Major Gregory admonished Johnson to not point weapons at the officers as it would be perceived as a threat. During these calls, Johnson advised Major Gregory that only NFAC members would be allowed in NFAC's march.

21. A review of a YouTube video taken by a bystander on July 25, 2020, revealed at least two members of NFAC calling out "SWAT" on the roof and "snipers" on the roof. This bystander was on the south side of W. Jefferson Street which is the street the NFAC members used to march to Louisville Metro Hall.

22. On July 26, 2020, in a telephone call with Johnson, Major Gregory discussed NFAC members aiming rifles at law enforcement officers and told Johnson they were "lucky" there had not been a shooting incident between NFAC and LMPD.

23. Prior to Johnson and NFAC's arrival in Louisville, KY on September 4, 2020, additional coordination phone calls and video conferences occurred between Johnson, Major Gregory, Lebron Seay, Broosko, and Halladay. Again Major Gregory advised Johnson that law enforcement officers would be on rooftops of buildings to include buildings in the area of Churchill Downs. Again Major Gregory admonished Johnson to not point weapons at the officers as it would be perceived as a threat by the officers.

24. During these calls, Johnson told Major Gregory that there would be additional weapons safety protocols in place to include the clearing of weapons into charging barrels. Johnson made it very clear to Major Gregory that he did not want NFAC and any other groups intermingling, specifically Until Freedom, Black Lives Matter, and Surge. Additionally, Johnson wanted LMPD to keep NFAC and counter-protestors separated. Johnson advised Major Gregory that he would be sending an advance or "recon" team to Louisville, KY the day before to scout the areas.

25. The FBI interviewed all five LMPD Officers on the roof of the Jefferson County Grand Jury Building on September 4, 2020. All five Officers described similar circumstances related to the public, and Johnson's knowledge, that law enforcement was on the roof of the Jefferson County Grand Jury Building. The Officers advised that since approximately May of 2020, the Jefferson County Grand Jury Building had been controlled by LMPD. This building was a controlled access governmental building and the public was not allowed to enter. Nightly, three announcements were made from the Jefferson County Grand Jury Building, clearly identified as coming from LMPD, announcing the closure of Jefferson Square Park to the north of the Jefferson County Grand Jury Building. To further LMPD's over watch mission, spot lights and speakers had been installed on the roof of the Jefferson County Grand Jury Building and the nearby Hall of Justice in approximately early July 2020.

26. Two of the Officers advised that they were wearing their LMPD soft body armor, with "Police" semi-reflective placard, the night of September 4, 2020. None of the Officers had drawn their handguns and only one of the Officers had a rifle with him, which he did not point at Johnson or the NFAC members on Armory Place. All Officers advised that neither Johnson, or the other NFAC members perceived a threat from the officers on the roof, because neither Johnson or the other NFAC members moved to cover when they saw the Officers on the roof of the Jefferson County Grand Jury Building.

27. The FBI interviewed Halladay regarding Johnson's local contact Lebron Seay. Halladay advised that Lebron Seay had been attending LMPD sponsored weekly meetings with other community activists, occurring on Thursdays, since approximately August 2020. During these meetings, one of the topics discussed is LMPD Officer's presence on the roof tops of buildings around Jefferson Square Park. LMPD also discusses with the

group the purpose of the roof top speakers and spotlights on the Jefferson County Grand Jury Building. Other topics related to police use of force and general policing are explained to the group. Halladay stated that Johnson's "circle" of associates clearly would have known that that the individuals on the roof of the Jefferson County Grand Jury Building the night of September 4, 2020 were law enforcement officers.

28. As stated earlier, the FBI obtained surveillance video of this encounter between Johnson and the Officers on the Jefferson County Grand Jury Building. One of the noticeable and important details of the video is that after the NFAC members begin pointing to the roof of the Jefferson County Grand Jury Building identifying the Officers presence on the roof, no one moves to seek cover or concealment. None of the NFAC members appear to be alarmed or concerned about their safety. A review of the video seems to suggest that Johnson and the group do not perceive a threat from the Officers on the roof. No other NFAC members aimed their rifles, or weapons, at the Officers, and the individuals forming Johnson's "security detail" did not point their weapons at the Officers on the roof.

29. The FBI reviewed a YouTube video posted on or around September 5, 2020 by a user "Black Nation Building" found at link *https://www.youtube.com/watch?v=abu2F7y9h_w* This video is taken on September 4, 2020, and begins shortly after Johnson's encounter with the Officers on the roof of the Jefferson County Grand Jury Building. Towards the end of the video, upon Johnson and the NFAC members return to their cars parked on Armory Place, an unidentified male can be seen and heard speaking about the parking garage [Louisville Gardens Parking Garage] to the south of the Jefferson County Grand Jury Building. The unidentified male is standing a few feet from Johnson and explains to the group twice that the

10

parking garage next to them is higher than the roof of the Jefferson County Grand Jury Building. The unidentified male explains that "last time" he and other unknown individuals were able to enter the parking garage and look down on "these snipers".

## BACKGROUND OF JOHNSON

30. The FBI conducted a review of Johnson's criminal history which showed a pattern of Johnson making threatening statements and then using a rifle or long gun to further threaten various individuals, including women and his wife. On or around March 10, 1995, Johnson was arrested for "Intentionally and knowingly cause *[sic]* bodily injury to Reisha Williams, by striking her on the left side of the face several times with a closed fist causing pain". Johnson was also arrested for "Intentionally and knowingly use *[sic]* a deadly weapon, to-wit: westerfield 20 gauge shotgun, manifestly designed, made and adapted for the purpose of inflicting death and serious bodily injury and did then and there threaten Jose Antonio Reyes with imminent bodily injury by the use of said deadly weapon." The same charge was applied to three other victims.

31. The FBI arrested Johnson upon criminal complaint on August 4, 2003 based on Johnson's actions at the Fort Bragg Military Reservation on August 1, 2003. According to the affidavit filed by the FBI agent, Johnson threatened to kill his wife, Sheneice Johnson [Sheneice] and her Platoon Sergeant, while Sheneice's unit was having a formation and recognition ceremony on Fort Bragg.

32. According to the affidavit, Sheneice's unit had just returned from overseas duty in Kuwait on July 30, 2003. Sheneice had been having marital problems with Johnson and claimed to be a victim of mental and physical abuse in their marriage. On August 1, 2003, Johnson told Sheneice he was going to "kill your friend". After this statement,

Johnson reached for a rifle in the trunk of his vehicle, and Sheneice tried to stop him but Johnson threatened to kill Sheneice if she didn't "get away".

33. The FBI obtained Johnson's United States military record which revealed he was a single channel radio operator in the Virginia National Guard from April 27, 1989 until October 16, 1990. According to Johnson's DD 214 – Certificate of Release or Discharge from Active Duty, he served active duty in the United States Army from July 23, 1998 until September 22, 1999, after which time he was discharged "under other than honorable conditions" and demoted to the rank of "Private". Further review indicates Johnson accepted this discharge in lieu of trial by court martial.

34. On March 18, 2005, Johnson was place on AWOL status for lying about an appointment and being assigned to quarters. On March 21, 2005, Johnson was classified a "Deserter/Absentee". On March 1, 2006, Johnson was apprehended and returned to US Military custody where he was charged with being AWOL from March 18, 2005 until March 1, 2006. On March 9, 2006, Johnson requested "Discharge in Lieu of Trial by Court Martial" and this request was approved on March 22, 2006. Johnson was discharged for a second time "under other than honorable conditions". On March 24, 2006 Johnson was reduced in rank from Sergeant to Private. The FBI is continuing to investigation how Johnson re-enlisted in the US Military, after being discharged previously "under other than honorable conditions".

## CONCLUSION

35. Based on the above facts and circumstances, Affiants state that there is probable cause to believe that JOHN FITZGERALD JOHNSON as committed violation of Title 18 United States Code (USC) section 111 (Assaulting, resisting, or impeding certain officers or employees).

Daniel Nally
Special Agent, FBI

Subscribed and sworn to before me on December 2, 2020.

Regina S. Edwards
United States Magistrate Judge